# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Todd Mark Kuikka,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill, Acting Commissioner<br>of Social Security,<br><br>　　　　　Defendant. | Case No. 17-cv-374 (HB)<br><br><br>**ORDER** |

Karl E. Osterhout, Osterhout Disability Law LLC, 521 Cedar Way, Suite 200, Oakmont, PA 15139 and Edward C. Olson, Attorney at Law, 331 Second Avenue South, Suite 420, Minneapolis, MN 55401, for Plaintiff Todd Mark Kuikka

Bahram Samie and Ann M. Bildtsen, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Defendant Nancy A. Berryhill

---

HILDY BOWBEER, United States Magistrate Judge[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Todd Mark Kuikka seeks judicial review of a final decision by the Acting Commissioner of Social Security denying his application for social security disability insurance benefits (DIB).  The matter is now before the Court on the parties' cross-motions for summary judgment [Doc. Nos. 16, 19].  For the reasons set forth below, the Court will deny Kuikka's motion for summary judgment and

---

[1] The parties have consented to have a United States Magistrate Judge conduct all proceedings in this case, including the entry of final judgment.

grant the Commissioner's motion for summary judgment.

## I. Procedural Background

Kuikka applied for DIB benefits on April 30, 2015, alleging a disability which began on November 5, 2011.  (R. 25.)  His applications were denied initially on July 29, 2015, and were again denied after reconsideration on November 25, 2015.  (*Id.*)  Kuikka then requested a hearing to review the denial of his benefit claims.  (*Id..*)  An administrative law judge ("ALJ") convened a hearing on May 13, 2016, at which vocational expert Robert Brezinski testified.  (*Id.*)  Assessing Kuikka's claims under the five-step sequential evaluation procedure outlined in 20 C.F.R. § 404.1520(a)(4), the ALJ issued a written decision on June 22, 2016, in which he determined that Kuikka was not disabled within the meaning of the Social Security Act.  (R. 20-31.)

At step one, the ALJ determined that Kuikka had not engaged in substantial gainful activity since the alleged onset date of November 5, 2011.  (R. 22.)  At step two, the ALJ determined that Kuikka had severe impairments from mild degenerative joint disease in the AC joint of his right shoulder, posttraumatic stress disorder ("PTSD"), anti-social and narcissistic personality disorder, and history of alcohol abuse in remission. (*Id.*)  The ALJ found at the third step, however, that no impairment or combination of impairments met or equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1.  (R. 23-24.)  At step four, the ALJ determined that Kuikka retained the residual functional capacity (RFC) to perform medium work which does not involve work at unprotected heights or near hazards and does not require more than occasional overhead work on the right. (R. 25.)  The ALJ further specified that Kuikka has the RFC

2

to do routine, repetitive simple work, not requiring any public contact or more than brief and superficial contacts with coworkers and supervisors. (R. 25.) Additionally, the work must be low stress, not requiring more than routine changes in the work process or setting. (*Id.*) Based on his assessment of Kuikka's limitations, the ALJ then concluded that Kuikka could not perform either of his past jobs as an explosive ordinance disposal worker or a photofinishing worker. (R. 29.) The ALJ then proceeded to step five and concluded that Kuikka could make a successful adjustment to work as a warehouse worker, polishing machine operator, or printed circuit board assembler. (R. 30.) Therefore, because Kuikka was able to work in certain positions available in the American economy, the ALJ deemed Kuikka not disabled. (R. 31.) The Appeals Council denied Kuikka's request for review, which made the ALJ's decision the final decision of the Commissioner. (R. 6.)

Kuikka then initiated this action for judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Kuikka asserts the medical opinions of Dr. Sandra Crossett, Ms. Jean Bjerke, and Mr. Gary Simpson establish that his PTSD, traumatic brain injuries and depression cause him to suffer marked to extreme impairments, yet the RFC vastly understates the specific limitations associated with his mental health issues. (Pl.'s Mem. Supp. Mot. Summ. J. at 13 [Doc. No. 17].) Further, Kuikka argues the ALJ erred in discounting the medical source opinions because she did not provide good reasons for doing so. (*Id.* at 15.) In particular, Kuikka faults the ALJ for failing to acknowledge that the opinions of Dr. Crossett, as an examining source, and Ms. Bjerke and Mr. Simpson, as treating sources, are entitled to greater weight. (*Id.* at

17-19.)  Additionally, Kuikka asserts the ALJ gave legally deficient and factually inaccurate rationales for rejecting the medical source opinions. (*Id.* at 19-27.)  In light of the improperly discounted medical source opinions, Kuikka asserts the RFC is not supported by substantial evidence because it ignores severe mental impairments suffered by Kuikka which prevent him from performing basic work activities.

## II.    Medical Background

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties.  The Court will recount the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

Kuikka is a veteran of the U.S. Air Force who was medically discharged after having served fourteen years in various roles, including as an explosive ordinance disposal team leader and forensic analyst.  (R. 4428.)  Kuikka served multiple tours in Iraq, Afghanistan and other combat zones around the world.  (R. 4428.)  The Veterans Benefits Administration has assessed Kuikka as 80% disabled as a result of injuries stemming from his service. (*Id.*)

Since his discharge, Kuikka has suffered from an inability to sleep due to nightmares.  His nightmares have their origins in two specific incidents he experienced in combat, one involving the bombing of an elementary school and the other involving the death of a child who approached Kuikka's convoy in a combat zone.  (R. 4428-29.) Kuikka and his wife explained during a diagnostic assessment that after three nights without sleep, he would spiral out of control by "'living in his head' and not

communicating, isolating himself and [experiencing] paranoia about what is going on around him." (R. 4428.) When he was unable to obtain relief from flashbacks and nightmares, Kuikka would find solace in alcohol and drink to excess so that he "would not remember the nightmares." (R. 4429.) In the Summer of 2014, Kuikka experienced unrelenting flashbacks and nightmares triggered by Fourth of July fireworks and the re-roofing of a neighbor's house. (*Id.*) Kuikka's reliance on alcohol during this period became particularly pronounced. (*Id.*) He was in and out of the St. Cloud Veterans Hospital psychiatric ward, and in August 2014, psychiatrist Dr. Brown recommended he be civilly committed. (*Id.*) Kuikka was not ultimately committed, but he did attend the Stadter Center in North Dakota for three and a half weeks, where his medications were altered to allow him to sleep. (*Id.*)

With the help of new medication, Kuikka reported being able to "turn down the volume" of his nightmares so he could "endure them without losing [his] mind." (R. 4429.) He then attended Fergus Falls Community Action Recovery Enterprises for the first two months of 2015, after which he participated in an after care plan. (*Id.*) Each week, the Tri County Crisis Response team visited him twice in his home, with social worker Gary Simpson as team lead. (*Id.*) He also underwent individual and marriage counseling at Lutheran Social Services with social worker Jean Bjerke. (*Id.*) These resources helped Kuikka adopt a strict household routine and structure, and he has been able to stay sober and respond to his nightmares, irritability and outbursts in a healthier way. (*Id.*)

## III.    Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision.  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Davidson v. Astrue*, 578 F.3d 838, 841 (8th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)), meaning that less than a preponderance of the evidence is needed to meet the standard.  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).  The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it."  *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).  The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently.  *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).  In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the decision.  *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability.  *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995).  To meet the definition of disability for DIB purposes, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The same standard applies to SSI claims.  *See* 42 U.S.C. § 1382c(a)(3)(A).  The disability, not just the impairment, must

have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

In reviewing the Commissioner's denial of a disability claim, the Court assesses whether the disability determination is supported by substantial evidence at each step of the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At the first step, the Commissioner determines if the claimant is working, *i.e.* "engaging in substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaging in substantial gainful activity, he is not disabled and the analysis ends there. 20 C.F.R. § 404.1520(b). At step two, the Commissioner assesses whether the claimant has a medically determinable impairment that is "severe," meaning it limits his ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant's impairment or set of impairments are not severe, the claimant is not disabled. *Id*. At step three, the Commissioner determines whether the claimant's impairment qualifies as a "listed impairment." 20 C.F.R. § 404.1520(a)(4)(iv). A listed impairment is one that *per se* qualifies a claimant for disability. 20 C.F.R. § 404.1520(d). If the claimant's impairment is not listed, however, the ALJ then proceeds to assess the claimant's RFC based on "all the relevant medical and other evidence in [the] record." 20 C.F.R. § 404.1520(e). At step four, the Commissioner considers the claimant's RFC and determines if the claimant is able to meet the demands of the job he or she held prior to the outset of the impairment. 20 C.F.R. § 404.1520(f). If the claimant is capable of working in his former job, the claimant is not disabled. *Id*.

Lastly, at step five, the Commissioner assesses whether the claimant is able to

adjust to any other work, taking into account his RFC, age, education and work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is able to do other work, he is not disabled.  20 C.F.R. § 404.1520(g).  Unlike the previous steps where the claimant has the burden of proof, at this last step the Commissioner has the burden of proving the claimant is not disabled due to the availability of other work.  20 C.F.R. § 416.912(b)(3). In particular, the ALJ must show that other work exists in significant numbers in the national economy that the claimant can do the work given his RFC, age, education, and work experience.  *Id.*

## IV.   Discussion

Kuikka argues the ALJ erred in assessing his RFC which resulted in the denial of his disability claim.  A residual functional capacity assessment is an administrative determination regarding the extent to which a claimant is capable of performing work-related activities given the claimant's impairments.  *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007).  The Commissioner determines the claimant's RFC by conducting "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," SSR 96-8p, 61 Fed. Reg. 34474-01 (July 2, 1996), and the end product measures the "most [the claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).

Here, Kuikka argues the ALJ committed three errors in assessing his RFC.  First, Kuikka argues the ALJ improperly gave little weight to the opinion of Kuikka's examining psychologist Dr. Crossett regarding Kuikka's mental limitations.  Second, Kuikka argues the ALJ erred when she gave no weight to the opinions of treating

therapists Ms. Bjerke and Mr. Simpson. Third, Kuikka argues the ALJ erred when she gave significant weight to the non-examining psychologists employed by the Social Security Administration. As a result of these errors, Kuikka asserts he was denied his disability claim based on the flawed RFC assessment which did not account for all of the practical effects of his mental limitations, namely his need to decompress after periods of heightened anxiety and an inability to understand or carry out work instructions or make work related decisions. Further, Kuikka argues that the vocational testimony provided at the disability hearing was based on a flawed RFC and thus does not constitute substantial evidence supporting the denial of benefits. Therefore, Kuikka argues the Court should enter judgment under sentence four of 42 U.S.C. § 405(g), reversing the Commissioner's final decision with a remand for a hearing.

### A.    Whether the ALJ erred by not considering the treating/examining relationship and specialization of the medical source opinions

Kuikka argues the ALJ failed to consider a number of the required factors when assigning weight to the opinions of Dr. Sandra Crossett, Jean Bjerke, and Gary Simpson. Kuikka saw Dr. Crossett, a licensed psychologist, at the Family Visions clinic in September 2015 to undergo diagnostic assessment and obtain a medical summary report. He treated with Ms. Bjerke and Mr. Simpson, both licensed clinical social workers, beginning in early 2015. Kuikka first asserts the ALJ did not give appropriate consideration to the fact that Dr. Crossett was an examining medical source or that Ms. Bjerke and Mr. Simpson were treating medical sources. (Pl.'s Mem. Supp. Summ. J. at 17-18). The opinion of an examining medical source is entitled to more weight than an

opinion from a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(c)(1). Relatedly, the medical opinion of a treating source is generally entitled to controlling weight, provided it is well-supported and not inconsistent with the record. 20 C.F.R. § 404.1527(c)(2). The ALJ may assign less than controlling weight to the opinion of a treating source, but must supply good reasons for doing so. *Id.* Kuikka contends the ALJ failed to discuss or even acknowledge how the treating or examining relationships of the medical sources entered into her decision regarding the appropriate weight to assign their opinions. (Pl. Mem. Supp. Summ. J. at 17.)

Second, Kuikka claims the ALJ did not account for the specialized credentials of these medical opinion sources when assigning weight to their opinions. (Pl.'s Mem. Supp. Summ. J. at 18.) An ALJ must give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist. 20 C.F.R. § 404.1527(c)(5). Kuikka asserts Dr. Crossett's opinion was entitled to additional weight because she was a psychologist, and that Ms. Bjerke's and Mr. Simpson's opinions were entitled to additional weight because they were trained social workers. Kuikka argues the ALJ erred because her opinion does not indicate that she gave their opinions the weight to which they were due in light of their specializations.

The Commissioner counters that Kuikka asks the Court to hold the ALJ to a standard not required by the governing regulations. (Def.'s Mem. Supp. Summ. J. at 4 [Doc. No. 20].) "[T]he regulations do not strictly require the ALJ to explicitly discuss each factor under 20 C.F.R. § 404.1527(c)." *Mapson v. Colvin*, No. 14-CV-1257

(SRN/BRT), 2015 WL 5313498, at *4 (D. Minn. Sept. 11, 2015) (internal brackets omitted). Rather, when assigning weight to a medical opinion, the ALJ should explain her decision regarding the weight given to a medical opinion to "allow[] a claimant or subsequent reviewer to follow the adjudicator's reasoning." 20 C.F.R. § 404.1527(f)(2). "While it may [be] preferable for the ALJ to discuss a [medical opinion] in more depth," the conclusions drawn from a medical opinion are valid if "there is substantial evidence in the record supporting the ALJ's finding." *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012). The Commissioner disputes that Ms. Bjerke and Mr. Simpson count as treating medical sources whose opinions are entitled to deference under the regulations, but argues that in any event, the ALJ provided sound bases for assigning no weight to the opinions of Ms. Bjerke and Mr. Simpson and little weight to the opinion of Dr. Crossett.

After a careful review of the record, the Court finds that the ALJ did not err by failing to explicitly account for how the treating/examining relationship or specialization of the medical sources factored into her decision. The regulations require that an ALJ account for the examining/treating relationship between the medical source and the claimant, as well as the extent to which the medical source's specialization warrants assigning additional weight to his or her opinion. 20 C.F.R. §§ 404.1527(c)(1)-(2), (5). The regulations do not require, however, that an ALJ exhaustively analyze how each of the relevant criteria in 20 C.F.R. § 404.1527(c) factored into her decision. 20 C.F.R. § 404.1527(f)(2). Instead, the regulations require the ALJ to supply a sound basis for the weight she assigns to medical source opinions such that a "claimant or subsequent reviewer [may] follow the adjudicator's reasoning." *Id*. Here, the ALJ's description was

sufficient to indicate that she took into account the treating/examining relationship of the medical sources, as well as their specialties. For example, when describing Dr. Crossett's opinion, the ALJ noted that she was a PhD who had conducted a mental status examination of Kuikka. (R. 27.) With respect to the treating therapists, the ALJ explicitly mentioned that Ms. Bjerke administered therapy to Kuikka, and indirectly indicated that Mr. Simpson provided therapy to Kuikka by referencing his treatment notes. (R. 27-28.) The ALJ also specifically noted the credentials of Ms. Bjerke and Mr. Simpson as licensed social workers. On these facts, the Court finds that the ALJ was cognizant of and took into account the examining/treating relationship and specialization of the medical sources. Whether the ALJ actually supplied sound bases for assigning less or no weight to their opinions is a matter the Court will consider below.

### B.    Whether the ALJ erred when she gave little weight to the opinions of examining source Dr. Crossett

In September 2015, Kuikka made multiple visits to the Family Visions counseling and therapy clinic to undergo diagnostic assessments and obtain a medical summary report. (R. 4428.) Dr. Crossett conducted the assessments and prepared the report for use in connection with Kuikka's DIB reconsideration claim. (*Id.*) Another aim of the diagnostic assessment was to understand Kuikka's depleted memory, which Dr. Crossett noted had not been assessed by any providers in the past, to discover if he suffered diminished cognitive capacity from the multiple blasts he experienced during his military service. (R. 4430.)

12

On examination, Dr. Crossett reported that Kuikka had normal appearance and hygiene, was cooperative but tense, exhibited no unusual movements or psychomotor changes, had normal speech, was anxious but very controlled, had a thought process that was goal-directed and logical, and had good insight and judgment. (*Id.*) However, she also reported that his short term memory was not intact. (*Id.*) Dr. Crossett relied on a number of evaluations tools to prepare her medical summary report, including a PHQ-9 patient health questionnaire, a General Anxiety Disorder 7 Item Assessment (GAD-7), the Alaska Screening Tool for Traumatic Brain Injury, and the Woodcock-Johnson Test for Cognitive Ability. (R. 4430.)

On the PHQ-9 assessment, Kuikka obtained a score of 14 which, according to Dr. Crossett, indicated severe concerns that made "work, care of home and getting along with people very difficult." (R. 4430.) His DAG-7 assessment returned a score of 13, raising moderate to severe concerns regarding Kuikka's anxiety. (*Id.*) In connection, Dr. Crossett noted that Kuikka's anxiety made him unable to stop or control his worrying several days a week, and that "more than half of the days he feels nervous or anxious, worries too much, has trouble relaxing and becomes irritable easily." (*Id.*) The Alaska Screening Tool assessment indicated that Kuikka experienced three combat-related head injuries caused by blasts, which together culminated in lingering physical and mental deficits. (R. 4431.) Lastly, with respect to the Woodcock-Johnson Test of Cognitive Ability, Dr. Crossett reported mixed positive and negative results. On the one hand, Kuikka's processing and memory for concept formation and verbal abilities fell in the high to superior range at the 95th percent and 94th percentile respectively. (*Id.*) He also

13

scored well in verbal ability (82nd percentile) and thinking ability (75th percentile).  (*Id.*)
On the other hand, Kuikka's auditory learning capacity placed him in the 27th percentile,
which Dr. Crossett noted to be a full standard deviation from his overall ability and a
significant difference from his previous scores.  (*Id.*)  Kuikka also had lower marks in
visual matching, scoring in the 38th percentile.  (*Id.*)

In her decision, the ALJ noted Dr. Crossett had concluded Kuikka showed
evidence of neurocognitive deficit secondary to traumatic brain injury; that he suffered
from marked restrictions in several areas, including understanding, remembering, and
carrying out short simple instructions and making simple work-related decisions; and that
had extreme limitations in interacting with others and responding appropriately to work
pressures or changes in work setting.  (R. 27.)  However, the ALJ determined Dr.
Crossett's opinions were entitled to little weight for several reasons.  First, Dr. Crossett
was not Kuikka's treating physician and only saw him for the limited purpose of assisting
him to obtain DIB benefits.  (R. 27.)  Second, the ALJ observed that Dr. Crossett had
made unsubstantiated claims about the Veterans Affairs Medical Center's unwillingness
to treat Kuikka and other similarly situated individuals, casting doubt on Dr. Crossett's
impartiality.  (R. 27, 4429.)  Third, the ALJ determined that Dr. Crossett's opinion was
both internally and externally inconsistent.  (R. 27.)  In particular, she noted that Dr.
Crossett's own testing did not document limitations at the severe to extreme level.
Additionally, the ALJ determined that evaluations done at the VA and evidence of
Kuikka's extensive activities did not track with the reported marked to extreme

limitations.  (*Id.*)  In light of these factors, the ALJ gave Dr. Crossett's opinion little weight.

Kuikka argues the ALJ's explanation for her decision to reject Dr. Crossett's opinions regarding his limitations was inadequate.  (Pl.'s Mem. Supp. Mem. Summ. J. at 15.)  Regardless of its source, the ALJ must evaluate every medical opinion against the factors prescribed in the regulations to decide the weight to which it is entitled.  20 C.F.R. § 404.1527(c).  In particular, the ALJ must consider whether the opinion is provided by an examining medical source, which is entitled to more weight than an opinion from a medical source who has not examined the claimant.  20 C.F.R. § 404.1527(c)(1).  The ALJ must also consider whether the medical opinion is supported by the evidence in the record, is consistent with the record as a whole, or is deserving of additional weight given the specialization of the opinion maker.  20 C.F.R. § 404.1527(c)(3)-(5).  Here, Kuikka argues the ALJ failed to give greater weight to Dr. Crossett's opinion in light of her familiarity with the medical history, medical test results, and examination results.  (Pl.'s Mem. Supp. Summ. J. at 19); *see also*, 20 C.F.R. § 404.1527(c)(3) (supportability factors).  Additionally, Kuikka argues that Dr. Crossett's medical opinion was neither internally nor externally inconsistent, particularly when her opinions are considered against consistent findings in the medical opinions provided by Ms. Bjerke and Ms. Simpson.  (Pl.'s Mem. Supp. Summ. J. at 17, 23-25.)

The Commissioner counters the ALJ properly weighed the medical opinion evidence of Dr. Crossett, and that Kuikka is essentially asking the Court to impermissibly reweigh the evidence and substitute its views for those of the ALJ.  (Def.'s Mem. Supp.

Summ. J. at 4 [Doc. No. 20].)  In particular, the Commissioner argues the ALJ supplied two valid reasons at the outset for discounting Dr. Crossett's opinion.  First, Dr. Crossett had an incentive to overstate Kuikka's symptoms because the acknowledged principal purpose of the evaluation was to assist Kuikka in his DIB reconsideration claim.  (R. 27, 4428.)  Second, Dr. Crossett improperly editorialized about the St. Cloud Veterans Affairs Health Care System in her opinion when she claimed it had denied treatment to Kuikka by pushing its responsibilities onto the county—a statement the ALJ characterized as unsubstantiated and suggestive that Dr. Crossett was not impartial in her evaluation.  (R. 27, 4429.)

Regarding the substance of Dr. Crossett's opinion, the Commissioner argues the ALJ appropriately discounted the opinion based on its internal inconsistencies.  (Def.'s Memo. Supp. Summ. J. at 7-9.)  An ALJ may properly assign little weight to a medical source opinion "because of its internal inconsistencies."  *Anderson v. Barnhart*, 344 F.3d 809, 813 (8th Cir. 2003).  Internal inconsistencies occur when a medical source provides descriptions of the claimant's abilities that conflict with her ultimate conclusions.  *Lehnartz v. Barnhart*, 142 F. App'x 939, 941 (8th Cir. 2005).  Here, the Commissioner argues that Dr. Crossett's test results paint a much different picture regarding Kuikka's mental abilities than the conclusions she drew regarding his marked to severe mental impairments.  Thus, the Commissioner argues the ALJ correctly determined that Dr. Crossett's opinion was internally inconsistent because it was not supported by her own testing.  (R. 27.)

The Commissioner additionally argues the ALJ correctly discounted Dr. Crossett's opinion based on external inconsistencies with the record as a whole. "The ALJ may reject the conclusions of any medical expert . . . if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir.2007). An opinion may be inconsistent with the record if it ascribes limitations to the claimant that are belied by the claimant's daily activities. *Fentress v. Berryhill,* 854 F.3d 1016, 1020-21 (8th Cir. 2017). Here, the Commissioner argues the ALJ correctly concluded that Dr. Crossett's opinion did not account for Kuikka's extensive daily activities.

After a detailed review of the record and pertinent regulations, the Court finds that the ALJ did not err in assigning little weight to Dr. Crossett's opinion. At the outset, the Court notes the regulations require an ALJ to supply a "good reason" for the weight given to a treating source's medical opinion. 20 C.F.R. § 404.1527(c)(2). However, "there is no similar expectation of furnishing a 'good reason' with regard to opinions of non-treating medical experts." *Marier v. Colvin*, No. CV 14-3169 (BRT), 2015 WL 12778773, at *15 (D. Minn. Dec. 1, 2015). Moreover, even though examining source opinions are better trusted than those supplied by non-examining sources, 20 C.F.R. § 404.1527(c)(1), an ALJ may discount them based on inconsistencies with the record as a whole. *See Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006); *Hedrington v. Colvin*, No. CIV. 14-1048 DWF/LIB, 2015 WL 5472733, at *17 (D. Minn. Sept. 17, 2015); *Martin v. Astrue*, No. CIV. 08-4704(DWF/JJK, 2009 WL 2982938, at *1 (D. Minn. Sept. 14, 2009. Here, Kuikka asks the Court to treat Dr. Crossett's opinion as if it were supplied by a treating source. But the record indicates that Dr. Crossett was not a

17

treating source, but rather an examining source that authored a medical summary report.

Therefore, Kuikka's argument that the ALJ needed to have supplied a good reason for

discounting Dr. Crossett's opinion in line with the requirements of 20 C.F.R. §

404.1527(c)(2) and SSR 96-2P is misplaced.

Nevertheless, the Court finds the ALJ did supply good reasons for discounting Dr.

Crossett's opinions. Assessing the weight given to Dr. Crossett's opinion under the

general terms of 20 C.F.R. § 404.1527(c), which applies to all medical opinions, the ALJ

explained that she gave little weight to Dr. Crossett's opinions because they conflicted

with her own test results and were inconsistent with the record as a whole. Dr. Crossett

recorded in her medical summary report that Kuikka achieved high scores on the

Woodcock-Johnson Test of Cognitive Ability in four different areas of cognitive

functioning, ranging from the 95th percentile to the 75th percentile. (R. 4431.) Further,

the markedly lower scores in auditory learning and visual matching, although subpar, do

not support the conclusion that he had "severely limited" or "no useful" cognitive ability.

R. 4436.) The Court also finds substantial evidence elsewhere in the record to support

the ALJ's conclusion that Kuikka functioned at a higher level than Dr. Crossett indicated

in her opinion. For example, Kuikka wrote a book detailing his experiences transitioning

back into civilian life after retiring from the military, promoted the book in personal

appearances and over the radio, was actively involved with his church, volunteered in his

community, regularly painted and sketched drawings in his home art studio, and

occasionally even sold his art to buyers. (R. 38-72.) Therefore, the Court finds the

record of Kuikka's daily activities, as well as the noted internal inconsistencies in the

medical summary report, provide substantial evidence to support assigning little weight
to Dr. Crossett's opinion.

### C.    Whether the ALJ erred when she gave no weight to the opinions of treating therapists Ms. Bjerke and Mr. Simpson

Beginning in March of 2015, Kuikka began seeing licensed social worker Jean
Bjerke for counseling to help him cope with the mental health issues he experienced as he
adjusted to civilian life.  (R. 2150.)  At her initial assessment, Ms. Bjerke determined that
Kuikka suffered from PTSD, major depression, and anxiety and noted that he exhibited
the following symptoms: depressed and anxious mood, delayed onset sleep subject to
interruption and/or early awakening, decreased interest in activities, reduced energy,
worry and restlessness, hypervigilance, and panic attacks.  (R. 2154.)   She further noted
that Kuikka's panic attacks were especially difficult when in crowds or around noise and
that his panic attacks caused him to feel of helpless and guilty.  (R. 2155.)  Based on her
initial assessment, Ms. Bjerke concluded that Kuikka's PTSD-induced anxiety, anger and
impulsiveness prevented him from working.  (R. 2158.)

Over the course of the year that followed, Kuikka regularly attended therapy with
Ms. Bjerke on a weekly or biweekly basis at Lutheran Social Services in St. Cloud.[2]  (R.

---

[2] Kuikka attended twenty four different therapy sessions on the following dates: March
10, 2015 (R. 2192), March 17, 2015 (R. 2190), March 23, 2015 (R. 2188), March 30,
2015 (R. 2186), April 7, 2015 (R. 2184), April 14, 2015 (R. 2182), April 21, 2015 (R.
2180), May 4, 2015 (R. 2178), May 19, 2015 (R. 2176), June 15, 2015 (R. 2172), June
22, 2015 (R. 2170), June 26, 2015 (R. 2174), July 14, 2015 (R. 2168), July 20, 2015 (R.
2166, 4417), August 4, 2015 (R. 2163, 4418), August 17, 2015 (R. 4419), August 21,
2015 (R. 4420), October 13, 2015 (R. 4421), October 27, 2015 (R. 4422), November 30,

2150-2193, 4415-4427.)  After approximately six months of therapy, Ms. Bjerke

completed a medical source statement in which she assessed Kuikka's work-related

abilities.  (R. 2748.)  In it, she opined that Kuikka was moderately restricted in his ability

to understand, remember and carry out simple instructions.  (R. 2748.)  She also stated

that Kuikka was moderately restricted in his ability to make judgments on simple work-

related decisions.  (*Id.*)  With respect to Kuikka's ability to interact with others at work,

Ms. Bjerke concluded that Kuikka had marked limitations in his ability to respond

appropriately to work pressures or respond to changes in a work setting.  (R. 2748.)  A

few months later, Ms. Bjerke sent a letter to Kuikka's disability application

representative, Bartholomew Paytner, to supplement her opinion.  (R. 4288.)  In her

letter, she explained that Kuikka continued to struggle to manage his severe symptoms of

depression and PTSD and that Kuikka's ongoing symptoms "significantly limit his ability

to function on a daily basis and are chronic in nature."  (*Id.*)

From March through May of 2015, Kuikka also regularly visited with licensed

social worker Gary Simpson during twice weekly in-home visits as part of the Four

County Crisis Response Team.  (R. 4290.)  The visits often involved rehab sessions,

where Mr. Simpson would check in with Kuikka about his alcohol use and discuss coping

mechanisms to head off potential urges to drink.  (R. 4290-4308.)  Mr. Simpson also

discussed Kuikka's PTSD symptoms, life stressors, daily activities and progress in

therapy with Ms. Bjerke.  (*Id.*)  On August 10, 2015, Mr. Simpson completed a medical

---

2015 (R. 4423), December 28, 2015 (R. 4424), January 22, 2016 (R. 4425), February 8,
2016 (R. 4426), February 22, 2016 (R. 4427).

source statement in which he assessed Kuikka's work related abilities.  (R. 2197-2198.)
In it, Mr. Simpson opined that Kuikka had marked restrictions in his ability to
understand, remember, and carry out simple instructions, and in his ability to respond
appropriately to work pressures or changes in a work setting.  (*Id.*)

In assessing Kuikka's RFC, the ALJ considered the opinions of Ms. Bjerke and
Mr. Simpson but ultimately determined that neither was entitled to any weight due to
internal inconsistencies.  (R. 27-28.)  In particular, the ALJ noted that Ms. Bjerke's
treatment notes "reflect activity consistent with no more than moderate limitations." (R.
27.)  As support, the ALJ highlighted various portions of Ms. Bjerke's treatment notes
that indicated Kuikka maintained a fairly active lifestyle, such as working around the
house, installing a white picket fence at his home, meeting with attorneys, writing a book,
participating in speaking engagements to promote that book, and celebrating holidays
with his family.  (R. 27.)  The ALJ additionally pointed out that, according to Ms.
Bjerke's treatment notes, Kuikka had shown "moderate progress" over the course of
treatment in his ability to handle stressors.  (R. 27-28.)  With respect to Mr. Simpson's
opinions, the ALJ concluded that his assessment that Kuikka suffered from marked
restrictions in several areas conflicted with statements in his treatment notes, *i.e.* that
Kuikka was generally doing well, his PTSD symptoms were manageable, and he was
able to maintain an active social life.  (*Id.*)

Kuikka argues that Ms. Bjerke and Mr. Simpson are treating sources whose
opinions are entitled to at least substantial weight, and that the ALJ erred when she
rejected both of their opinions based on her finding that Kuikka's fairly active lifestyle

contradicted a finding of marked limitations.   (Pl.'s Mem. Supp. Mem. Summ. J. at 20-23.)   In social security cases, the opinion of a treating medical source is generally afforded controlling weight.[3]  *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017). If the ALJ assigns less than controlling weight to the opinion of a treating source, "the ALJ must give good reasons for doing so."  *Id*.  Good reasons for assigning less weight exist when the treating professional's opinions are themselves inconsistent, *Cruze v. Chater*, 85 F.3d 1320, 1324–25 (8th Cir. 1996), or are inconsistent with the record on the whole, *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir.2006).  However, when a treating professional "renders inconsistent opinions that undermine the credibility of such opinions," an ALJ may discount or even disregard the opinion entirely.  *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000) (referencing *Cruze*, 85 F.3d at 1324–25).

Here, Kuikka makes two arguments for why ALJ incorrectly concluded that his daily activities contradict a finding of marked limitations.  First, Kuikka stresses that his writing and art activities are coping mechanisms to help him deal with his PTSD symptoms, not evidence of an active lifestyle.  To the contrary, Kuikka asserts, these activities actually provide evidence of the marked limitations noted by Ms. Bjerke and Mr. Simpson, because they show he needs time out from daily activities to respond to

---

[3] The requirement to give controlling weight to the opinion of a treating physician or medical professional unless it is contradicted by substantial evidence is oftentimes referred to as the Treating Physician Rule.  Harvey McCormick, *Social Security Claims and Procedures* § 8:103 (6th ed. 2017).  On March 27, 2017, the Social Security Administration rescinded the Treating Physician Rule with respect to social security disability appeals filed after the date of publication.  SSR 96-2P, 61 Fed. Reg. 5844 (Mar. 27, 2017).  Here, because Kuikka applied for disability on April 30, 2015, the Treating Physician Rule applies.

symptoms of his PTSD and anxiety.  Second, Kuikka argues the ALJ focused her

decision on the activities he is able to engage in but ignored the significant list of

activities his PTSD and anxiety prevent him from doing, *e.g.* going shopping, paying the

bills, completing household tasks in a reasonable amount of time, maintaining a regular

sleep schedule, or sustaining normal energy levels throughout each day of a given week.

The Commissioner responds that Ms. Bjerke and Mr. Simpson are "other sources"

under the Social Security regulations, and that the ALJ properly disregarded their

opinions based on inconsistencies found in their treatment notes.  The Court agrees.  As

licensed clinical social workers, Ms. Bjerke and Mr. Johnson are "other sources."  20

C.F.R. § 404.1502; *Isham v. Colvin*, No. CIV. 13-2377 JRT/SER, 2015 WL 691411, at

*23 (D. Minn. Feb. 18, 2015).  They are not "acceptable medical sources" and therefore

cannot be "treating sources," and their opinions are not medical opinions.  20 C.F.R. §§

404.1527(a)(1), (c)(2).  Evidence provided by "other sources" must be considered by the

ALJ as it may "present evidence of the severity of the claimant's impairment and the

effect of the impairment on the claimant's ability to work," *Lacroix v. Barnhart*, 465 F.3d

881, 886 (8th Cir. 2006); however, "the ALJ is permitted to discount such evidence if it is

inconsistent with the evidence in the record."  *Lawson v. Colvin*, 807 F.3d 962, 967 (8th

Cir. 2015).

Furthermore, as required by 20 C.F.R. § 404.1527(f)(2), the ALJ explained her

rationale for giving no weight to Ms. Bjerke's and Mr. Simpson's opinions, namely, that

she found them to be inconsistent with their respective treatment notes.  The ALJ then

proceeded to highlight portions of the treatment notes that were inconsistent with both

therapists' conclusions regarding Kuikka's marked mental limitations, such as the active role Kuikka played in his church and veterans community, the considerable time he spent making art and writing a book, his efforts to promote the book, and the contributions he was able to make at home.

Although it may be possible to draw two different conclusions from these facts regarding the extent to which Kuikka maintains an active lifestyle, the Court may not reverse an ALJ decision based on its own assessment regarding which conclusion is correct. Rather, the Court's review is limited and deferential, and it must uphold an ALJ's decision if it is supported by substantial evidence. *See Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996). On these facts, the Court finds the ALJ supplied enough support for a reasonable mind to conclude that Kuikka maintains a relatively active lifestyle and that his daily activities are inconsistent with the marked mental limitations assessed by Ms. Bjerke and Mr. Simpson. Therefore, the ALJ's decision to assign no weight to the opinions is support by substantial evidence.

### D.    Whether the ALJ erred when she gave significant weight to the opinions of the agency's non-examining psychological consultants

Kuikka argues the ALJ erred when she assigned significant weight to the opinions of the non-examining state agency psychological consultants. "State agency psychological consultants are highly qualified psychologists who are also experts in Social Security disability evaluation." *Lilja v. Berryhill*, No. 16-CV-540 (TNL), 2017 WL 1183977, at *24 (D. Minn. Mar. 29, 2017) (internal quotations omitted). However, because state agency psychological consultants are non-examining sources, the weight an

ALJ gives to their opinions "depends on the degree to which they provided supporting explanations."  20 C.F.R. § 404.1527(c)(3).  Kuikka argues the psychological consultants' opinions are not deserving of significant weight because the consultants did not have access to the entire record.  (R. 74-76, 94-100.)   For instance, the psychological consultants reviewed Kuikka's record before some or all of Ms. Bjerke's medical source statements were available.  (*Compare* R. 74-76, 94-100 (dates of agency psychologists' review) *with* R. 2748-2750, 4288-89 (dates of Ms Bjerke's medical source statements)).  Kuikka claims that other records postdating the psychological consultants' opinions also demonstrate his debilitating symptoms from PTSD and depression.  Therefore, because the psychological consultants were unable to review later added evidence, Kuikka asserts they did not have all that they needed to make a complete and accurate assessment of his condition and their opinions should be discounted to reflect that.

Kuikka also argues the ALJ erred by relying too heavily on the psychological consultants' opinions when determining his RFC.  Psychological consultants' opinions do not by themselves constitute substantial evidence.  *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004).  Accordingly, if a psychological consultant's opinion supplies the only evidence to support an RFC assessment, the RFC is not supported by substantial evidence.  *Dixon v. Barnhart*, 324 F.3d 997, 1002 (8th Cir. 2003).  While his argument on this point is not well-developed, Kuikka appears to argue that the psychological consultants' opinions, which contradict the opinions of medical professionals who examined and/or treated him, provide the only evidence in the record to support the RFC, and that therefore, the RFC is not supported by substantial evidence.

25

After evaluating the evidence in the record, the Court finds the ALJ properly weighed the psychological consultants' opinions.  As an initial matter, the Court notes that an ALJ may embrace a state agency psychological consultant's opinion even if it was made before the record was fully developed.  *Dang Chang v. Berryhill*, No. 15-CV-4496 (ADM/HB), 2017 WL 762006, at *13 (D. Minn. Feb. 6, 2017), *report and recommendation adopted*, No. 15-CV-4496 (ADM/HB), 2017 WL 758925 (D. Minn. Feb. 27, 2017).  An ALJ may also assign significant weight to the opinion of a state agency medical consultant who did not have access to all of the records, so long as the ALJ conducts an independent review of the evidence and takes into account the portions of the record the consultant had not considered.  *Perry v. Colvin*, No. 13-cv-1185 (JNE/TNL), 2014 WL 4113015, at *57-58 (D. Minn. Aug. 20, 2014) (internal quotations omitted).  Here, the ALJ gave careful consideration to evidence in the record that was added after the psychological consultants' opinions were rendered, namely by conducting a detailed review of Ms. Bjerke's medical source opinion and treatment notes.  The ALJ also considered the psychological consultants' opinions against the record as a whole, explaining that she found their opinions to be "consistent with . . . the overall clinical findings and signs of mental illness; the claimant's course of and response to mental health treatment; and the claimant's daily and other activities."  (R. 28.)  On these facts, the Court finds that the ALJ fully considered all evidence in the record and, in light of that evidence, permissibly concluded the psychological consultants' opinions were entitled to significant weight.

26

The Court additionally finds that the ALJ did not rely too heavily on the psychological consultants' opinions when assessing Kuikka's RFC. Contrary to Kuikka's assertion, state agency psychologists' opinions are not automatically undermined by the fact that they conflict with opinions provided by examining sources. It is the ALJ's task to resolve conflicting medical opinions. *Delka v. Barnhart*, 102 F. App'x 513, 514 (8th Cir. 2004). In doing so, an ALJ may assign a state agency psychologist's opinion greater weight than an examining source opinion when the psychologist's opinion is better supported by evidence in the record. *Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014). In this case, the ALJ independently reviewed the state agency psychologists' opinions as well as the opinions provided by examining sources Dr. Crossett, Ms. Bjerke, and Mr. Simpson. She determined the examining source opinions were entitled to little or no weight based on their inconsistencies, which the regulations identify as a valid reason to discount medical opinions. *See* 20 C.F.R. § 404.1527(c)(4). By contrast, she concluded the state agency psychologists' opinions were entitled to significant weight because they were supported by the overall clinical findings, the evidence of the effective treatment, and the record of daily activities. (R. 28.) In other words, the ALJ thoroughly assessed each medical opinion in the record as the regulations require and properly determined the state agency psychologists' opinions were entitled to significant weight. For that reason, the Court concludes the ALJ gave appropriate weight to the psychological consultants' opinions when assessing Kuikka's RFC even though they conflicted with the examining source opinions.

The Court also finds no basis to conclude that the ALJ relied *solely* on the psychological consultants' opinions to assess Kuikka's RFC.  An ALJ may rely on a psychological consultants' opinion as part of a broader body of evidence supporting her decision.  *Harvey*, 368 F.3d at 1016; *Thiele v. Astrue*, 856 F. Supp. 2d 1034, 1047 (D. Minn. 2012).  The ALJ specifically described the broad array of evidence in the record on which she relied to assess Kuikka's capabilities.  (R. 25-27.)  For instance, she recounted Kuikka's course of treatment and stated that his positive outcomes provide support for her RFC assessment. (R. 26.)  In particular, she noted that Kuikka has been helped by medication, coping skills, and therapy.  (R. 26-27.)  The ALJ also explained the records from Kuikka's mental health case management files demonstrate he maintained a fairly active lifestyle which undermine claims of work-related restrictions beyond those identified in the RFC; Kuikka kept busy reading, writing, painting, working on his book, doing yoga, and exercising.  (R. 27.)  The ALJ further highlighted Kuikka's Veterans Administration compensation and pension examination files, which recorded that Kuikka was only moderately impaired by his psychiatric condition and that he was likely employable.  (*Id.*)  Those same records also indicated that Kuikka functioned in the average to above-average range in terms of intelligence and that his psychiatric prognosis would improve if Kuikka abstained from alcohol and stayed consistent with his therapy. (*Id.*)  All told, the decision demonstrates the ALJ did not solely rely on the psychological consultants' opinions when assessing Kuikka's RFC but rather viewed it as one part of the broader record.  Further, the ALJ supplied a sufficient rationale for the RFC she assessed.  Therefore, the Court finds substantial evidence supports Kuikka's RFC.

**E.**     **Whether the ALJ erred when she failed to acknowledge Kuikka's strong work history when assessing his credibility**

Kuikka argues the ALJ's assessment of the credibility of Kuikka's subjective complaints was deficient because it failed to acknowledge or discuss Kuikka's strong work history, which shows he was continuously employed from the time he was 18 years old until his alleged disability onset date, and earned income in 79 out of 80 possible quarters since 1992. According to Kuikka, such a steady track record is a highly relevant factor that the ALJ should have discussed in her decision when assessing his credibility.

An ALJ must consider the following *Polaski* factors when evaluating a claimant's credibility: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (referencing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). However, an ALJ need not explicitly discuss each *Polaski* factor in her decision. *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir.2005). Further, the Court must defer to an ALJ's credibility determination about a claimant's subjective complaints when the ALJ "explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir.2010).

Here, the ALJ discounted Kuikka's subjective complaints based on "significant inconsistencies in the record as a whole." (R. 25.) She then proceeded to identify those inconsistencies throughout her opinion, highlighting in particular that Kuikka's treatment

29

record and daily activities did not support limitations beyond those reflected in the RFC. (R. 26-29.) Moreover, Kuikka's assertion that the ALJ did not acknowledge or discuss his strong work history is incorrect. Specifically, the ALJ noted that "the claimant worked steadily in the past, which is to his credit." (R. 29.) However, in context of his prior work history, the ALJ noted Kuikka was now working in his art studio, promoting his book, and being supported by VA disability benefits—all of which indicated "he may not have economic incentive to return to work." (*Id.*) Therefore, the Court concludes the ALJ did not fail to consider Kuikka's work history when assessing his credibility, and that she provided a sufficient basis for discounting his subjective complaints.

## V.     Conclusion

In sum, the Court finds the disability determination to be supported by substantial evidence. The ALJ's decision to give little weight to Dr. Crossett's opinion is well-supported by the record. As an examining source, Dr. Crossett's opinion was entitled to more deference than a non-examining source opinion; however, the ALJ appropriately concluded Dr. Crossett's opinion was at least partially unreliable based on internal inconsistencies and contradictions with the record as a whole. The ALJ's decision to give no weight to Ms. Bjerke's and Mr. Simpson's opinions is also well-supported by the record. Ms. Bjerke and Mr. Simpson are "other sources" under the Social Security regulations, and their opinions are not entitled to treating source deference. Nevertheless, the ALJ dedicated a portion of her decision to explaining their internal inconsistencies to justify the weight she assigned them, and noted in particular the active role Kuikka played in his church and veterans community, the time he spent making art and writing a

book, his efforts to promote the book, the time he enjoyed with his family and the contributions he was able to make at home. Additionally, the ALJ provided ample explanation in her decision about her consideration of the state agency psychologists' opinions in the context of the record as a whole, and appropriately assigned their opinions significant weight. Finally, the ALJ did not err by failing to account for Kuikka's strong work history when weighing his credibility. In fact, the ALJ explicitly accounted for it in her decision while providing a sound basis for discounting his subjective complaints.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Todd Mark Kuikka's Motion for Summary Judgment [Doc. No. 16] is **DENIED**;

2. Nancy A. Berryhill's Motion for Summary Judgment [Doc. No. 19] is **GRANTED**.

   **LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: March 15, 2018

_____*s/ Hildy Bowbeer*_____
HILDY BOWBEER
United States Magistrate Judge